UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MILDRED CHATMAN,<br><br>      Plaintiff,<br><br>  v.<br><br>BOARD OF EDUCATION OF THE CITY OF CHICAGO,<br><br>      Defendant. | Civil Case No. 1:18-cv-01328<br><br>Honorable Marvin E. Aspen |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

  Plaintiff Mildred Chatman ("Chatman") sued Defendant Board of Education of the City of Chicago ("BOE") under the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII"). (First Am. Compl. ("Compl.") (Dkt. No. 16) ¶ 1.) Chatman alleges BOE did not hire her because of: (1) her age pursuant to the ADEA, (*id.* ¶ 30); (2) her race pursuant to Title VII, (*id.* ¶ 34); and, (3) in retaliation of a protected activity pursuant to Title VII, (*id.* ¶ 38). Presently before us is BOE's Rule 56(a) Motion for Summary Judgment and related motions to strike. (Def. MSJ (Dkt. No. 68) at 3; Pl. Mot. Strike (Dkt. No. 85); Def. Mot. Strike (Dkt. No. 94).) For the foregoing reasons, we grant BOE's Motion for Summary Judgment and BOE's motion to strike certain exhibits from our consideration of BOE's summary judgment motion. We deny Chatman's motion to strike.

## BACKGROUND

Chatman is a 62-year-old African American woman. (Def.'s Statement Material Facts ("Def. SOF") (Dkt. No. 62) ¶ 1; Pl's Resp. to Def.'s Statement of Material Facts ("Pl. SOF") (Dkt. No. 86))[1]. BOE employed Chatman as a library assistant and then laid her off. (Def. SOF ¶ 2.) Chatman filed a charge for age and race discrimination with the Illinois Department of Human Rights andthe Equal Employment Opportunity Commission ("EEOC"), then sued in the Cook County Circuit Court. (*Id.* ¶ 7.)

That lawsuit settled, (*id.* ¶ 9), and as part of that settlement, BOE agreed to interview Chatman for positions within the Chicago Public School ("CPS") system. (*Id.* ¶ 11). BOE was not obliged to hire Chatman for any of the positions. (*Id.* ¶ 13.) To schedule an interview, Chatman was to identify the vacant positions on the CPS job website, Taleo, and notify the CPS Director, Deputy General Counsel, and a Senior Assistant General Counsel between February 9, 2015, and December 31, 2015. (*Id.* ¶ 12.). Chatman did not directly notify any of the listed CPS employees in the agreement, (*id.* ¶ 13), but identified "more than a dozen positions" from where BOE arranged five interviews. (Pl. SOF ¶ 5.) Chatman did not submit an online application for any of the five positions, (Def. SOF ¶ 18–19), nor provide cover letters, a resume, references, or any other materials (hereinafter, "application documents") to the principals before or during the interviews. (*Id.* ¶ 20.) BOE did not hire Chatman for any of the positions. (*Id.* ¶ 15.) Then Chatman filed a charge of race, age, and retaliatory discrimination with the EEOC against BOE on September 9, 2016. (Compl. ¶ 6.) The details for each of the positions follow.

---

[1] Counsel uploaded this document twice to the ECF system, so it appears as both docket entries 84 and 86. Docket entry 86 includes the attached exhibits referenced below, so we cite to this docket entry.

2

Chatman interviewed for a library assistant position at Edward Beasley Elementary Magnet Academic Center ("Beasley") on June 2, 2015. (*Id.* ¶ 14, 29.) BOE notified Chatman's counsel on September 9, 2015, the position was filled. (*Id.* ¶ 30).

Chatman recalls interviewing for a teacher assistant position at Charles W. Earle Elementary School ("Earle") on September 10, 2015. (*Id.* ¶ 14, 31.) But Chatman has not produced evidence of this interview occurring. (*Id.* ¶ 34). Chatman identified Michael Watkins as a similarly situated individual hired as a teacher assistant. (*Id.* ¶ 32). BOE hired Watkins as a Teacher Assistant II at Beasley on August 8, 2015. (*Id.* ¶ 33).

BOE scheduled an interview for Chatman for a library assistant position at Arnold Mireles Elementary Academy ("Mireles") on November 23, 2015, (*id.* ¶ 14, 35), and forwarded Chatman's resume to Principal Randle-Robbins, (*Id.* Ex. K at 3). Principal Randle-Robbins, a decisionmaker involved in the hiring process, (*id.* ¶ 36), has no recollection of Chatman's interview. (*Id.* Ex. J ¶ 6). Mireles has not had a library assistant since 2014. (*Id.* ¶ 38). There is some dispute whether another individual, identified as K.D., was selected for the position, but no evidence that he was actually on-boarded for the position. (Pl. SOF ¶¶ 9; Def. Resp. Pl. SOF ("Def. SOF Resp.") (Dkt. No. 92) ¶ 9.) There is some dispute whether Randle-Robbins discussed a lawsuit with Chatman during her interview. (Pl. SOF ¶¶ 10; Def. SOF Resp. ¶¶ 10.) There is no documentary evidence disputing that this position was closed on Feb 10, 2016 for budgetary reasons. (Def. SOF ¶ 34.)

Chatman interviewed for a Special Education Classroom Assistant (SECA) position at James McDade Classical School ("McDade") on December 2, 2015, with Principal Perry. (Def. SOF ¶¶ 14, 39.) BOE sent a copy of Chatman's resume to Principal Perry before the interview. (*Id.* Ex. L at 2.) The position required holding a valid Illinois State Board of Education ("ISBE")

3

paraprofessional license. (*Id.* ¶ 44.) Chatman may hold a paraprofessional license from Illinois, but apparently became aware of that fact during discovery for this lawsuit. (Pl. SOF ¶ 22.) She has not worked as a SECA or at any of the schools where she interviewed. (Def. SOF ¶ 23.) Principal Perry, a decisionmaker involved in the hiring process, (*id.* ¶ 41), hired Contressa Alexander, an African American female over 40 years old, and Jonathan Dorsey, an African American male, both holding valid ISBE paraprofessional licenses and with prior working experience at McDade. (*Id.* ¶¶ 41–51.) Principal Perry did not know why Taleo had requested he interview Chatman when deciding who to hire. (*Id.* ¶ 44.) Principal Perry did not know Chatman's age, (*id.* ¶ 53), or of any lawsuit or grievance claim filed by Chatman against BOE when deciding who to hire. (*Id.* ¶ 52). Principal Perry looked for qualified candidates that were familiar with McDade. (*Id.* ¶ 44.) When hiring Alexander, Principal Perry considered her ISBE license and prior work experience as a SECA and at McDade. (*Id.* ¶ 46.) When hiring Dorsey, Principal Perry considered his status as a graduate of McDade, prior volunteering for SECA positions, and classroom experience with special education students. (*Id.* ¶ 49.)

Chatman interviewed for a SECA position at Ray Elementary School ("Ray") on December 17, 2015, with Principal Thole. (*Id.* ¶¶ 14, 54.) Principal Thole had a copy of Chatman's resume she reviewed during the interview. (*Id.* Ex. F ¶ 4). The position required holding a valid ISBE paraprofessional license. (*Id.* ¶ 60.) Principal Thole, a decisionmaker involved in the hiring process, (*id.* ¶ 55), hired Sheila Tines, an African American woman over 40 years old, Doralia Coleman, an African American woman over 40 years old, and Rokeya Begum, an Asian woman. (*Id.* ¶¶ 61, 64, 66, 67, 69, 71, 73.) These three hires all held ISBE paraprofessional licenses and had prior working experience as a SECA and/or working at Ray. (*Id.* ¶¶ 57–73.) There is some dispute whether Chatman was more experienced than these hires

4

in general, but not whether she had more experience working as a SECA or at Ray. (Pl. SOF ¶¶ 15, 16.) When making the hiring decision, Principal Thole did not know Chatman's age and was unaware of any lawsuit or grievance claim filed by Chatman against BOE. (*Id.* ¶ 56.) Principal Thole considered the applicants prior SECA experience, fit with students and other teachers, relevant content and/or grade level experience, positive recommendations, whether they had a valid ISBE Paraprofessional License, and hired the best candidates based on these. (*Id.* ¶¶ 58–59.)

## LEGAL STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of production and must support its assertion by identifying those portions of the record that it "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

To overcome a properly supported motion for summary judgment, the nonmovantmust present affirmative evidence "from which a jury might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S. Ct. 2505, 2514 (1986). We draw "all justifiable inferences are [] drawn in [the non-movant's] favor." *Id. at* 255, 106 S. Ct. at 2513. If the evidence is insufficient for a jury to return a verdict for the nonmoving party, or if the evidence is "merely colorable [] or not significantly probative," a court may grant summary judgment for the moving party. *Id.* at 249 (citations omitted).

## ANALYSIS

### I. Motions to Strike

Both Chatman and the BOE filed motions to strike various exhibits. (Dkt. Nos. 85 & 95.) "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, … affidavits or declarations …; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact … the court may … consider the fact undisputed for purposes of the motion…." Fed. R. Civ. P. 56(e).

#### A. Defendants' motions to strike

"Supporting materials designed to establish issues of fact in a summary judgment proceeding 'must be established through one of the vehicles designed to ensure reliability and veracity—depositions, answers to interrogatories, admissions and affidavits. When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence.'" *Reed v. Richards*, 32 F.3d 570 (7th Cir. 1994) (table op.) (quoting *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987)).

Chatman argues she can lay the foundation for these exhibits at trial, so she does not need to introduce affidavits or deposition testimony to authenticate her exhibits. Chatman misunderstands the standard for opposing a motion for summary judgment. Materials must be admissible at trial *as presented* in opposition to the motion for summary judgment. It is not sufficient to claim that documents that lack foundation or would be hearsay as attached could be established on cross-examination at trial: the parties must support their statements of fact in a form that would be admissible as presented. (*Contra* Dkt. No. 99.) Since we cannot determine the contents of hypothetical cross-examination at trial or the responses to hypothetical questions

counsel could pose, we cannot say that foundation is or could be established. To do so we would need to put words into the mouths of people who could have spoken for themselves had Plaintiff deposed any Defense witness. Plaintiff's failure to raise any non-speculative foundation for any of the exhibits that BOE moves to strike means we must grant BOE's motion to strike under Rule 56(e).

BOE moved to strike various exhibits as hearsay. Exhibits 2 and 4 are documents from the Illinois Department of Human Rights and EEOC's request for additional information. (Pl. SOF Ex. 2 & 4.) Exhibits 7, 8, and 10 are documents purportedly from the BOE's job postings and an email from the BOE's Talent office. (Pl. SOF Ex. 7, 8, 10.)

Evidence is hearsay if it is a statement offered for the truth of the matter asserted and is not made while testifying at the current trial or hearing. Fed. R. Evid. 801(c). Public records may be excepted from the rule against hearsay if they set out the office's activities, "a matter observed while under a legal duty to report," or in a civil case "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A). Even "true copies of the originals" cannot be transformed into admissible evidence based solely on unsworn assertions that they will be used at trial in an admissible format. *Reed v. Richards*, 32 F.3d at 570.

To demonstrate that Plaintiff's attached exhibits fall within exceptions to the hearsay rule, Plaintiff must establish that the exhibits as presented would meet the exception. Since Plaintiff's arguments rest upon responses to hypothetical cross-examination questions at trial, rather than affidavits or deposition testimony, (*see* Dkt. No. 99 at 5) we cannot credit her account of the attached records as fitting within any hearsay exception. Accordingly, we grant Defendant's motion to strike Plaintiff's exhibits as hearsay not subject to any exception, since Chatman did not establish the requisite foundation for her submissions to fit within the business

records exception. We need not decide whether Chatman would have proven correct if she submitted supporting sworn documentation authenticating her exhibits, she has failed to lay that foundation in her submissions and thus cannot avail herself of this Court's speculation about her submissions to except them from the hearsay rules. Thus, the exhibits attached to Plaintiff's response to Defendant's statement of facts as Exhibits 2, 4, 7, 8, and 10 are struck. (Pl. SOF Ex. 2, 4, 7, 8, 10.)

### B. Plaintiff's motion to strike

Chatman moved to strike Defendant's affidavit from Principal Thole insofar as it relies on evidence produced after the close of discovery. (Dkt. No. 85 at 2.) Evidence produced after the close of discovery is subject to sanction under Federal Rule of Civil Procedure 26(e) if a party does not supplement or correct an interrogatory response in a timely manner upon learning new information. Fed. R. Civ. P. 26(e). We determine whether or not to sanction a violation of this rule considering "the following factors …: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Chatman argues Principal Thole's affidavit relies on material not turned over to the Plaintiff before the close of discovery. (Dkt. No. 85 at 2.) Neither party disputes this fact, but the BOE argues its apparent violation of Rule 26(e) should be excused given its efforts to timely inform Chatman of newly discovered information in keeping with its obligations. (Dkt. No. 95 at 5.)

No factor here weighs in favor of striking any portion of Principle Thole's affidavit. Plaintiff has not established any prejudice or surprise from the additional documentation. Indeed,

8

Plaintiff never sought to depose Principal Thole or requested any extension of time to respond to the newly produced information. In addition, the *outcomes* of Principal Thole's hiring search that form the basis of Plaintiff's indirect proof of discrimination were disclosed. (*Id.* at 5.) Similarly, Plaintiff never sought to cure the supposed prejudice to her case until nearly six months passed. Instead, Plaintiff missed the status hearing before the filing of Defendant's motion for summary judgment. (*Id.* at 6.; Dkt. Nos. 66 & 67.) It is difficult to take Plaintiff's outrage at face value given the lack of apparent interest she showed in prosecuting her case up to this point.

The final two factors also do not counsel in favor of granting Chatman's motion to strike. There is no clear disruption to the prospect of a trial and there has been no movement to deposed Principal Thole or otherwise question her at any point. Chatman adduces no evidence suggesting her claim that Principal Thole sat on documents until after the close of discovery is in any way true, so there is no evidence substantiating her claims of bad faith. Since no *Caterpillar* factor weighs in Plaintiff's favor, we deny her motion to strike.

## II.   Statute of Limitations

The Board contends that Chatman's claims related to the school library assistant position at Beasley and the teacher assistant position at Earle are time-barred. (Mot. (Dkt. No. 68) ¶ 1; Def. Mem. of Law in Support of Mot. for Summ. J. ("Def. Mem.") (Dkt. No. 69) at 5–6.) The timely filing of a charge of discrimination with the EEOC is a prerequisite to commencing a civil action under the ADEA and Title VII. *See* 29 U.S.C. § 626(d); 42 U.S.C. § 2000e–5(e); *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 456 (7th Cir. 2018); *Jackson v. City of Chicago*, 552 F.3d 619, 623 (7th Cir. 2009). An Illinois claimant must file a charge with the EEOC within 300 days after the alleged unlawful practice occurred. 29 U.S.C. § 626(d)(1)(B); 42 U.S.C. § 2000e–

5(e)(1). An unlawful employment practice generally refers to discrete acts such as "termination, failure to promote, denial of transfer, and refusal to hire." *Jackson*, 552 F.3d at 623 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 2073 (2002)). Discrete discriminatory acts such as a refusal to hire are "easy to identify" and are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan,* 536 U.S. at 113, 122 S. Ct. at 2072–73. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113, 122 S. Ct. 2072; *see also Jackson*, 552 F.3d at 624. A discriminatory act is actionable at the time the employment decision was made and communicated to the plaintiff. *See Morgan,* 536 U.S. at 113, 122 S. Ct. at 2072; *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995).

To the extent that Chatman's claims are premised on each decision by the Board to not re-hire her for a position she interviewed for, they constitute discrete discriminatory acts for purposes of the 300-day deadline. *Morgan*, 536 U.S. at 113, 122 S. Ct. at 2072. Chatman filed her EEOC charge on September 9, 2016. (Def. Loc. Rule 56.1 Statement of Material Facts Exhibit C (Dkt. No. 70–4).) Therefore, Chatman's claims based on conduct prior to November 14, 2015, are time-barred and are not actionable.

Chatman's claims based on the school library assistant position at Beasley are time-barred. Chatman interviewed for the school library assistant position at Beasley on June 2, 2015, and Chatman's counsel was notified that the position had been filled on September 9, 2015. (Def. Loc. Rule 56.1 Statement of Material Facts ("Def. SOMF") (Dkt. No. 70) ¶¶ 29–30). The conduct took place prior to November 14, 2015 and is therefore time-barred.

Chatman's claims based on the teacher assistant position at Earle are time-barred. Chatman claims that she interviewed for the teacher assistant position at Earle on September 10,

10

2015. (Def. SOMF ¶ 31.) The Board contends that Chatman has not produced any evidence related to the position at Earle, such as a communication email after the interview, other than Chatman's own recollection that the interview occurred more than one month before the November 14, 2015 statutory deadline. (*See* Def. Mem. at 6.) Chatman fails to respond to the Board's argument timely and fails to present evidence that any of the Board's conduct regarding the position at Earle occurred on or after November 14, 2015. Since no evidence demonstrates any discriminatory action occurred after Chatman's interview on September 10, no evidence suggests Chatman's claim falls within the statute of limitations; the only evidence of any interaction between the BOE and Chatman occurred several months before November. Accordingly, Chatman's claims based on the teacher assistant position at Earle are time-barred.

### III.    Age and Race Discrimination Claims

Title VII prohibits employers from refusing to hire or discriminating against an individual based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). ADEA prohibits employers from firing workers who are 40 or older based on their age. 29 U.S.C. § 623(a)(1), 631(a). The legal standard for employment discrimination claims is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

The *McDonnell Douglas* burden-shifting framework ("McDonnell analysis") is a way to evaluate whether the evidence is enough for a prima facie case of discrimination under Title VII or ADEA. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018); *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017). In the

11

failure to hire context, McDonnell analysis test requires the plaintiff to show: "(1) that she is a member of a protected class, (2) that she applied for a position for which she was qualified, (3) that she did not receive the position, and (4) that similarly situated persons outside of the protected class were hired." *Johnson v. Beach Park Sch. Dist.*, 103 F. Supp. 3d 931, 937–38 (N.D. Ill. 2015), *aff'd*, 638 F. App'x 501 (7th Cir. 2016). "If the plaintiff has established this prima facie case, the burden shifts 'to the defendant to 'articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.'" *Carson v. Lake Cty., Indiana*, 865 F.3d 526, 533 (7th Cir. 2017) (quoting *Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 661 (7th Cir. 2016)).

To adjudicate summary judgment, however, a court must ultimately "assess cumulatively all the evidence presented by the [plaintiff] to determine whether it permits a reasonable factfinder to determine that [the adverse action] was attributable to [a proscribed factor under Title VII]." *David*, 846 F.3d at 224.

**A. McDonnell Analysis for Race**

Chatman is African American and a member of a protected class under Title VII. Chatman was not hired for the positions she interviewed. To establish a prima face case for race discrimination under McDonnell analysis, Chatman must show: (1) she was qualified and properly applied for the vacant positions; and, (2) the positions were filled by a similarly situated non-African American candidate. *See Johnson*, 103 F. Supp. 3d at 937–38.

*1. Proper Application and Qualifications*

Failure to complete an online application is not fatal to McDonnell analysis if an applicant submits a resume directly to an employer. *See Johnson*, 103 F. Supp. 3d 9 at 936. As

in *Johnson*, Chatman did not submit an online application for the positions, but BOE had a copy of Chatman's resume that it forwarded to the decisionmakers. A reasonable juror can conclude Chatman did apply for the positions.

A plaintiff must show "evidence from which a reasonable jury [can] conclude that [the plaintiff] met the [] objective hiring criteria" for the positions. *Johnson*, 638 F. App'x at 502. Contentions are not enough and a plaintiff must provide supporting evidence, such as job postings. *Bennett v. Roberts,* 295 F.3d 687, 696 (7th Cir. 2002) (finding advanced degrees are not enough to infer automatic qualification when the applicant had "ample opportunity to develop the record."). The SECA positions at McDade and Ray required holding a valid paraprofessional license that Chatman did not hold. Chatman did not submit any evidence of the requirements for the library assistant position at Mireles. So, an analysis of her qualifications for the position would be entirely speculative. A reasonable juror cannot conclude from the evidence that Chatman met the objective hiring criteria for the positions.

    *2.    Similarly Situated Comparators*

The fourth prong of McDonnell analysis requires a plaintiff to identify "similarly situated persons outside of the protected class [who] were hired over her." *Johnson*, 103 F. Supp. at 938. Determinations of similarly situated persons are "fact intensive [sic] [and] requir[e] consideration of the circumstances as a whole." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). "[A]t a minimum, the allegedly similarly situated [persons must] possess[] analogous attributes, experience, education, and qualifications relevant to the positions sought." *Id.* at 610–11 (citation and internal quotation marks omitted) . BOE hired two employees for the SECA position at McDade, and both were members of the same protected class as Chatman. BOE hired three employees for the SECA position at Ray, and two were members of the same

13

protected class as Chatman. No employee was hired for the teaching assistant position at Mireles, and the position is now closed. Chatman did not submit evidence regarding the hired employee's skills or levels of experience to identify them as similarly situated. A reasonable juror cannot conclude from the evidence that similarly situated persons outside of Chatman's protected class were hired over her.

### B. McDonnell Analysis for Age

Chatman was over 40 years old at the time of her interviews and a member of a protected class under ADEA. To establish a prima face case for age discrimination under McDonnell analysis, Chatman must show: (1) she was qualified and properly applied for the vacant positions; and, (2) the positions were filled by a similarly situated candidate under 40 years old. *See Johnson*, 103 F. Supp. 3d at 937–38.

####    1.    *Proper Application, Qualifications, and Similarly Situated Comparators*

As noted above, we find Chatman properly applied for the position, but a reasonable juror cannot conclude from the submitted evidence that Chatman met the objective hiring criteria for the positions. One of the two hired employees for the SECA position at McDade and two of three hired employees for the SECA position at Ray were members of the same protected class as Chatman. Chatman did not provide information as to the hired employee's skills or qualifications to identify them as similarly situated. BOE did not hire a teaching assistant position at Mireles and the position is now closed. A reasonable juror cannot conclude from the presented evidence that similarly situated persons outside of Chatman's protected class were hired over her for the positions.

C. **Defendant's Reasons for not Hiring**

Once a plaintiff establishes a prima facie case of discrimination, "a defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its decision not to hire [plaintiff]." *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005) (citation and internal quotation marks omitted).[2] An employer's honest belief that a candidate is better suited for a position, even if the belief is "mistaken, ill-considered or foolish," satisfies this requirement. *See id.* (citation and internal quotation marks omitted) ("We need not decide who was or was not qualified. The [] decisionmakers score[] each applicant and rank[] them in order of their averaged score. It is not for us to second-guess their formula."). A plaintiff then has the burden to prove the reason is pretextual, either by "directly by persuading the court that a discriminatory reason more likely motivated the defendant or indirectly by showing that the defendants' proffered explanation is unworthy of credence." *Id.* (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089 (1981); *see also Whitfield v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 445 (7th Cir. 2014) (finding that a court cannot rely on speculative reasons without support from a known decisionmaker). BOE has provided affidavits from the decisionmakers with their legitimate, nondiscriminatory reasons to not hire Chatman. (Def. SOF Exs. F, G, I, J.) Chatman has not provided any documentary evidence to show the reasons are pretextual. Assuming, *arguendo*, Chatman met the four elements of McDonnell analysis for age

---

[2] Although *Blise* is a § 1981 case and not a Title VII case, the same standards apply. F.3d at 866 n.4 (citing *Bennett v. Roberts*, 295 F.3d 687, 697 (7th Cir.2002)).

and race discrimination, her claims still fail because BOE has given legitimate and uncontradicted nondiscriminatory reasons for not hiring her that are not pretextual.

### D. Assessing Cumulative Evidence

Assessing the evidence cumulatively is a straightforward analysis and involves placing all the evidence together "in a single pile and [] evaluat[ing it] as [a] whole." *Ortiz*, 834 F.3d at 766. The present evidence includes job listings with hiring requirements for the SECA positions at McDade and Ray and affidavits from the decisionmakers stating their reasons for hiring or closing the vacant position. Chatman did not have the required licenses for the two SECA positions. The other candidates were better aligned for the SECA positions based on the decisionmaker's hiring reasons, including familiarity with the schools and prior classroom experience with special education students. The teaching assistant position at Mireles was closed for budgetary reasons. A reasonable factfinder cannot conclude from the evidence that BOE did not hire Chatman because of her race or age.

## IV.    Retaliation Claims

Title VII prohibits employers from discriminating against individuals who "ma[k]e a charge, testif[y], assist[], or participate[] in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). The legal standard for a retaliation claim under Title VII is "whether the evidence as a whole would permit a reasonable jury to find that the plaintiff's sex, age, or prior charges led to adverse employment actions." *Ortiz* F.3d at 765.

To survive summary judgment in a failure-to-hire context, a plaintiff must show: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and, (3) there is a causal link between the two. *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017). "A

plaintiff demonstrates a causal connection by showing that the defendant would not have taken the adverse . . . action but for [the] protected activity." *Id.* (citation and internal quotation marks omitted). A causal connection can be shown through direct evidence, for example, admission, or through "various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action." *Id.* at 661–62, 665 (quoting *Morgan v. SVT, LLC*, 724 F.3d 990, 996 (7th Cir. 2013)) (noting that examples of such circumstantial evidence include unusual departure from hiring procedures, employer's untruthfulness, and suspicious timing); *see, e.g.*, *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (quoting *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005)) ("Suspicious timing by itself will rarely support an inference of retaliation, but it may do so "[w]hen an adverse employment action follows on the close heels of protected expression and the plaintiff can show the person who decided to impose the adverse action knew of the protected conduct.").

Filing an EEOC charge is a protected activity, and failing to hire is a materially adverse employment action. *Baines at* 661. Chatman meets the first two elements. To survive summary judgment Chatman must show evidence that allows a reasonable juror to conclude that BOE did not hire because of her prior EEOC charge. Chatman has not offered any direct or circumstantial evidence to show that BOE decisionmakers did not hire her because of her prior EEOC charge. Principal Perry and Principal Thole from McDade and Ray, respectively, were unaware of Chatman's prior EEOC charge. Principal Randle-Robbins of Mireles does not recall an interview with Chatman. Thus there is no question of material fact whatsoever that would lead a reasonable juror to conclude that Chatman was not hired in retaliation for her prior EEOC charge.

## CONCLUSION

For the foregoing reasons, we grant Defendants' Motion for Summary Judgment in its entirety, we grant Defendants' Motion to Strike exhibits 2, 4, 7, 8, and 10 from Plaintiff's statement of fact response, and we deny Plaintiff's Motion to strike. It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: August 31, 2020